## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MIKHAIL ARKADYEVICH DUDYREV,

    *Petitioner*,

    v.                                                                       No. 1:26-cv-00767-SMD-JHR

MARKWAYNE MULLIN,[1] *et al*.,

    *Respondents*.

### <u>ORDER</u>

Before the Court is Petitioner Mikhail Arkadyevich Dudyrev's Verified Petition for Writ of Habeas Corpus ("Petition"), filed on March 13, 2026.  Doc. 1.  Petitioner is a native and citizen of Russia who entered the United States as a refugee on February 2, 1990, and subsequently adjusted his status to lawful permanent resident.  Doc. 1 ¶ 26; Doc. 8 at 1.

On June 16, 2014, Petitioner pleaded guilty to felony damage to property under a Minnesota statute, based on allegations that he became intoxicated and discharged a pistol in reckless manner.  Doc. 1 ¶ 29.  He was sentenced to a year and a day in prison and ordered to pay $2,772.05 in restitution.  *Id.* ¶ 30.

On July 21, 2016, Petitioner was ordered removed from the United States but was granted Withholding of Removal to Russia.  *Id.* ¶ 31.  He waived his right to appeal.  The 90-day removal period under 28 U.S.C. § 1231(a)(1)(A) ended on October 19, 2016.  Doc. 8 at 2.

Immigration and Customs Enforcement ("ICE") sought authorization to remove Petitioner to Ukraine and Kazakhstan, but both countries declined to issue travel documents.  Doc. 1 ¶ 33.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), an action does not abate when a public officer who is a party in official capacity resigns or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party, and any misnomer not affecting the parties' substantial rights must be disregarded. While the court may order substitution at any time, the absence of such an order does not affect the substitution.

Four months later, having been unable to remove Petitioner, ICE released Petitioner under an Order of Supervision requiring him to appear and report upon request. *Id.* ¶ 34. Petitioner complied with the reporting requirements, checking in most recently on December 14, 2025, and scheduling the next appearance for December 14, 2026. *Id.* ¶ 35.

On January 31, 2026, ICE officers arrived at Petitioner's home and arrested him.[2] *Id.* ¶ 36. On the same day, ICE served a Notice of Revocation of Release notifying Petitioner that his release was being revoked because "circumstances have changed such that there is a significant likelihood of removal in the foreseeable future." Doc. 8 at 2, Doc. 7-2. These "changed circumstances" rest on the facts that Petitioner was "ordered removed to, but w[as] granted withholding of removal to Russia" and that his "case is under review for removal to an alternate country." *Id.* Petitioner asserts that no action was taken to effectuate removal before he was detained, and Respondents concede that there is no timeline for Petitioner's removal. *See* Doc. 7-1 ¶ 13.

On May 18, 2026, the Court ordered Respondents to provide a status report on their progress in removing Petitioner. *See* Doc. 9. On May 21, 2026, Respondents submitted a report containing only the cursory statement that "[u]pon information and belief, ERO Headquarters is still working to identify a third country for removal." Doc. 10 at 1.

**LEGAL STANDARD**

An application for habeas corpus pursuant to § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *See Demore v. Kim*, 538

---

[2] The Petition alleges that ICE detained Petitioner on January 29, 2026, but the reply indicates that he was instead detained on January 31, 2026. Doc. 8 at 2. The declaration of the deportation officer confirms the January 31, 2026 date. Doc. 7-1 ¶ 8.

2

U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that the district court properly exercised jurisdiction over a habeas petition challenging continued detention without a bonding hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## DISCUSSION

### I.      The Court Has Subject Matter Jurisdiction.

The Court has subject matter jurisdiction to review Petitioner's claims. *See Tuck v. United Serv.'s Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (stating that a federal court has an independent obligation to assure itself of subject matter jurisdiction).

Respondents invoke 8 U.S.C. §§ 1252(g) and (b)(9) to argue this Court lacks jurisdiction. They argue these statutes bar judicial review because the government detains Petitioner to execute his removal order, pointing to cases where courts have declined to exercise jurisdiction over a challenge to revocation of release. *See* Doc. 7 at 8 (citing *Tazu v. Att'y Gen. of United States*, 975 F.3d 292, 298 (3d Cir. 2020).

Respondents correctly note that § 1252 bars courts from reviewing the merits of a removal determination. *See id.*; *Vaupel v. Ortiz*, 244 F. App'x 892, 895 (10th Cir. 2007). Here, however, Petitioner does not seek that type of review.

Petitioner does not challenge the substance of a removal order or any findings regarding removability. Instead, he challenges his continued detention as a violation of the Due Process Clause. That constitutional claim differs from a challenge to a removal determination. *See Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (citing *Demore*, 538 U.S. at 517); *see also* 8 C.F.R. § 1003.19(d).

3

Petitioner's due process claim therefore does not arise "from the implementation or operation of the expedited removal order." *See Turgerel v. Mukasey*, 513 F.3d 1202, 1205 (10th Cir. 2008); *Vaupel*, 244 F. App'x at 895; *Mursalin v. Dedos*, No. 1:25-CV-00681-MIS-JMR, 2025 WL 3140824, at *8 (D.N.M. Nov. 10, 2025). Therefore, the jurisdictional bar under § 1252 does not apply.

Courts routinely distinguish detention challenges from challenges to removal orders. As one court explained, "[w]here a petitioner 'does not challenge any final order of removal, but challenges his detention prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *8 (S.D. Cal. Oct. 1, 2025) (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008)). The Court finds that reasoning persuasive. Section 1252 therefore does not deprive the Court of subject matter jurisdiction over Petitioner's habeas petition.

## II.     Statutory Framework: 8 U.S.C. § 1231

The parties do not dispute that 8 U.S.C. § 1231 governs Petitioner's custody, since his removal order became administratively final in 2016. *See* Doc. 1 ¶¶ 19–24; Doc. 7 at 13.

Under § 1231(a)(1), the government has a 90-day period in which to remove a noncitizen after a removal order becomes final. If the government is unable to effect removal within that 90-day period, continued detention becomes discretionary. *See* 8 U.S.C. § 1231(a)(6). Indefinite detention, however, is not permitted. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.").

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts." *Id.* at 701. After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing. *Id.*

Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*. *Vo v. Bondi*, No. 2:25-CV-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-CV-019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

### III.    Petitioner's Continued Detention Violates 8 U.S.C. § 1231 Because His Removal Is Not Reasonably Foreseeable.

Respondents note that once the presumptively constitutional six-month period under *Zadvydas* elapses, Petitioner bears the burden to show his detention has become prolonged and potentially unlawful because there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Doc. 7 at 11. The Court finds that Petitioner has met his initial burden of proof, and Respondents have failed to rebut this showing.

First, Petitioner's cumulative detention exceeds the presumptively constitutional six-month limit.  During a four-months period between July 21, 2016 and November 16, 2016, ICE unsuccessfully attempted to remove him to a third country, yet both Ukraine and Kazakhstan declined to issue travel documents.  Doc. 1 ¶ 33–34.  The record indicates that Petitioner cooperated with removal efforts and waived his appeal rights.  *See* Doc. 8 at 2.  ICE re-detained Petitioner on January 31, 2026.  In the subsequent five months, the record reflects no progress toward removal, as there is no identifiable third country, no relevant correspondence, and no issued travel documents.  *See* Doc. 10.

Tenth Circuit case law supports this conclusion.  In *Abiodun v. Musakey*, the court distinguished *Zadvydas*, noting that the *Zadvydas* petitioners faced indefinite detention because "their countries of origin would not accept them."  264 F. App'x 726, 729 (10th Cir. 2008).  By contrast, the petitioner's country of origin in *Abiodun* had issued travel documents, and ICE had successfully placed the petitioner on chartered flights, leading the court to find a likelihood of removal in the foreseeable future.  The present case is analogous to *Zadvydas* and distinguishable from *Abiodun*.  Here, Petitioner has shown that his removal is unlikely in the reasonably foreseeable future, and Respondents have failed to rebut that showing.

Courts in this district have also reached similar conclusions.  In *Ndou v. Noem*, the court found no likelihood of removal because no travel documents had been issued and there was no indication that the destination countries were cooperating with immigration authorities.  No. 2:26-CV-00220-KWR-GJF, 2026 WL 686564, at *4 (D.N.M. Mar. 11, 2026).  Similarly, in *Jimenez Chacon v. Lyons*, the court found removal was not reasonably foreseeable because the government failed to show that any third country was likely to accept the petitioner.  811 F. Supp. 3d 1299, 1310 (D.N.M. 2025) (rejecting the government's argument that a criminal record justifies

prolonged detention to secure third country removal, noting that *Zadvydas* itself involved petitioners with significant criminal histories).

Respondents rely on *Tshiteya v. Crawford* to argue that courts typically find removal is not reasonably foreseeable "in situations where no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time." Doc. 7 at 12 (citing *Tshiteya v. Crawford*, 2013 WL 6635096, at *4 (E.D. Va. Dec. 16, 2013)). Yet, these are precisely the facts present in this case. Petitioner cannot be removed to Russia, no third country has agreed to accept him, and Respondents' removal efforts have gone unanswered. *See* Doc. 10.

**IV.    Alternatively, Petitioner's Continued Detention Violates Due Process.**

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner asserts that Respondents failed to conduct an interview in accordance with 8 C.F.R. § 241.13(i)(3) before purporting to revoke his supervised release, and that he was denied an opportunity to rebut the basis for his re-detention. Doc. 1 ¶ 55.

Under § 241.13(i)(3), ICE must follow specific procedures to revoke a noncitizen's supervised release and return the noncitizen to custody. First, ICE must provide notification of the reasons for revocation. Second, ICE must promptly conduct an informal interview, affording

the noncitizen an opportunity to respond to those reasons.  Third, the noncitizen may submit evidence showing either compliance with the order of supervision or that there is no significant likelihood of removal in the reasonably foreseeable future.  Finally, ICE must evaluate any contested facts to determine whether revocation and continued detention are warranted. § 241.13(i)(3); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023); *Le Nguyen v. Bondi*, No. 2:25-CV-01198 KWR-JMR, 2026 WL 892491, at *5–6 (D.N.M. Mar. 31, 2026).

Here, the record before the Court does not suggest that these procedures were followed. Respondents submit a Notice of Revocation of Release dated January 31, 2026, the same day Petitioner was taken into custody, but they do not allege that Petitioner violated his order of supervision. *See* Doc. 7-2.  Furthermore, the informal interview record fails to show that Petitioner responded to the reasons for revocation; the form contains only the handwritten word "stay."  *See* Doc. 7-3.  Ultimately, the record contains no evidence that Petitioner was afforded an opportunity to submit evidence and information to rebut the revocation.  *See Le Nguyen*, 2026 WL 892491, at *6.

Petitioner is at least entitled to the "procedures authorized by Congress."  *Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").  While the regulations grant Respondents significant discretion, Petitioner has a liberty interest in Respondents properly revoking his Order of Supervision.

Thus, the Court concludes Petitioner has a liberty interest in the procedures under § 241.13(i), which set forth the procedures Respondents are required to follow in re-detaining him.

Petitioner asserts that Respondents did not follow those procedures, and Respondents offer no evidence to the contrary. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned.").

## CONCLUSION

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents shall release Petitioner within 48 hours of this Order being entered;

3) Respondents shall facilitate Petitioner's transportation from the detention facility by notifying Petitioner's counsel when and where he can be collected, and by providing all necessary identity and travel documents to return to his primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** remove Petitioner to any third country without first providing him with constitutionally compliant procedures;

9

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**